IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


Secora v. Secora


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


Nancy A. Secora, appellee,

v.

Louis E. Secora, appellant.


Filed October 22, 2019.    No. A-18-1121.


Appeal from the District Court for Douglas County: Gregory M. Schatz, Judge. Affirmed.

A. Bree Robbins and Bradley Marsicek, of Cordell & Cordell, L.L.P., for appellant.

Zachary W. Lutz-Priefert and Margaret A. Mark, of Gross & Welch, P.C., L.L.O., for appellee.


Moore, Chief Judge, and Bishop and Welch, Judges.

Moore, Chief Judge.

### INTRODUCTION

Louis Secora appeals from the order of the Douglas County District Court which found him in contempt of court for failure to provide his ex-wife with benefits required by the divorce decree. For the reasons that follow, we affirm the order of the district court.

### BACKGROUND

Louis Secora (Louis) and Nancy Secora, now known as Nancy Morton (Nancy), were married in August 1996. Louis served in the military from April 1966 through April 1968. During his military service, Louis was exposed to Agent Orange and now has numerous health problems and a blood condition. Following his military service, Louis worked for the Veterans Administration (VA) in a civil capacity as a mason. His job duties included floor repair, erection

of walls, plaster and cement work, and tile work, which entailed climbing, standing, kneeling, and lifting. On July 31, 2006, a letter from the United States Office of Personnel Management (OPM) was sent to Louis, which stated that Louis was disabled from his position as a mason due to "lumbar disc disease, degenerative changes, neural foraminal stenosis, deep venous thrombosis and pulmonary thromboembolic disease with thrombophilia and anti thrombin 3 deficiency and factor V leiden."

On April 22, 2010, a decree of dissolution was entered by the Douglas County District Court. The decree recites that the parties had entered into an agreement relative to the issues of alimony, division of property, the payment of debts, and others matters set forth in the decree. A provision in the decree granted Nancy a portion of Louis's monthly VA pension. The decree states:

> **VA PENSION**: The Defendant receives a monthly pension from the VA, prorated for the period that the parties were married. The parties agree that Plaintiff shall receive an interest in Defendants VA Pension equal to 18.33% which is based on 61.5 months/330 months commencing with the February 2010 payment. Defendant's attorney shall prepare a Qualified Domestic Relations Order ("QDRO") forthwith upon the entry of this Decree to effectuate this split. Both parties shall cooperate with each other as may be necessary to provide appropriate information for the entry of said QDRO.

Following the entry of the decree, various discussions were had between Nancy's attorneys and Louis or his attorneys regarding preparation of the QDRO. Louis had several different attorneys following the divorce and at times was apparently without counsel.

In November 2010, Nancy filed her first application to find Louis in contempt of court for failing to provide a QDRO. In January 2011 there was correspondence between Nancy's attorney and Louis, and then with Louis' new counsel, with regard to Louis' execution of an authorization to release information to allow Nancy's counsel to obtain the appropriate information necessary to enter a QDRO. This correspondence references an earlier email from Louis saying that he would not sign the authorization, although he wanted to comply with the decree and resolve the matter. Louis eventually signed the authorization and it was forwarded by Nancy's attorney to the VA. Nancy's attorney reminded Louis, and then his counsel, that it was their responsibility to complete the QDRO in order for Nancy to receive her portion of the pension. The previously scheduled show cause hearing was postponed. This application for contempt was subsequently dismissed for lack of prosecution in August 2011.

Nancy filed a second application to find Louis in contempt in June 2013. In December 2013, Nancy's attorney sent a letter to Louis' attorney regarding another authorization form to be signed by Louis in an effort to "finally reach a resolution regarding the division of [Louis'] VA pension benefits." This second application was dismissed for lack of prosecution in March 2014. Nancy filed a third application to find Louis in contempt in March 2014. Apparently there was a hearing set in August 2014 at which time Louis was represented by yet another attorney. This attorney sent Nancy's attorney an affidavit of Louis for the hearing. In the affidavit, Louis stated that he received a copy of the QDRO in March 2014; that he receives disability payments, not retirement; and that the split of "the disability payments or my retirement" should not be retroactive

to 2010 as the QDRO was not completed by attorneys until March 2014. Again, this third application was dismissed for lack of prosecution in December 2014.

On April 21, 2016, the district court entered a "Court Order Acceptable for Processing" which was prepared by Nancy's attorney. This order explicitly recognized Nancy's right to receive a portion of benefits payable under the Civil Service Retirement System. The order was prepared in accordance with final regulations issued by the OPM. The order states that Louis is eligible for retirement benefits under the Civil Service Retirement System based on employment with the U.S. government. The order assigned to Nancy 18.33 percent of Louis' gross monthly annuity (including any military benefits payable by the OPM) determined as of January 29, 2010.

In early 2017, Nancy received a letter stating that she would begin receiving benefits August 1, 2016. Nancy received a payment of the funds from August 2016 through June 2017, and started receiving a monthly benefit in July 2017. Nancy's benefit amounted to $392.26 per month.

On March 24, 2017, Nancy filed a Verified Motion for Order to Show Cause, asking that Louis be held in contempt for failing to provide the necessary cooperation to help Nancy receive her 18.33 percent of Louis's VA pension. Trial was held July 14.

Nancy testified that while the parties were married, Louis was receiving pension benefits from the VA. Nancy indicated that the terms of the decree were agreed upon by the parties. Nancy testified that Louis was not cooperative with her attempts to receive the VA benefits. According to Nancy, she was required to engage her own attorney to obtain the QDRO provided for in the decree due to Louis' failure to do so. Nancy testified that Louis had been receiving the entire benefit since the entry of the decree, until she began receiving payment in August 2016, despite his agreement that she was to receive a percentage of the benefits. Nancy calculated the amount that Louis owed her for the 6 years following the divorce at $30,596.28 (78 months at $392.26 a month). Nancy acknowledged that the payments may have increased over those years due to cost of living increases, but she did not have the information from Louis to make that determination. Further, Nancy claimed that as a result of Louis's failure to comply with the terms of the decree, she incurred substantial attorney's fees. Nancy's attorney's fees incurred prior to trial amounted to $4,354.12.

Louis testified that he started receiving disability payments in 2006. Louis acknowledged the provision in the decree regarding division of pension benefits, but claimed that he was only receiving disability payments at that time. Louis testified that he was aware he (or his attorney) was responsible for processing the QDRO paperwork and that he did not do it. He also acknowledged that from 2010 until 2016, he received and spent his entire monthly payments from the government with no reduction for the portion Nancy was entitled to receive. Louis testified that he cooperated with Nancy's attorney by signing the release for information and by giving his "numbers" and other information required to process a QDRO. Louis indicated that in 2014, his attorney prepared a QDRO but it was not accepted by the OPM. Louis testified regarding his 2014 affidavit and claimed that "through negotiations", Nancy's attorney was to prepare the QDRO. He maintained that he should not have to make back payments because the QDRO wasn't completed by the attorneys. He also testified that he receives disability payments only and Nancy is not entitled to any portion of them because they are not divisible. Louis offered documents in evidence which state he is 100 percent disabled and characterize his annuity payments as disability. Finally,

Louis offered portions of his bank statements and testified that he has a fixed income and is unable to make any back payments to Nancy.

The district court entered an order on July 21, 2017, finding Louis in contempt and that he owed Nancy $30,000 in back pay and $3,000 toward attorney's fees. Further, the order allowed Louis to purge himself of contempt by paying the requisite $30,000 and $3,000 to Nancy.

Louis filed an appeal from this order, which this court dismissed finding that the July 21, 2017, order was not a final appealable order. On November 6, 2018, the district court issued a sentencing order, imposing a 30-day jail sentence for Louis' failure to purge his contempt. The order recited the parties' agreement that the $25,000 security bond held with the clerk of the district court would be released to Nancy in lieu of an immediate jail sentence. The order ordered Louis to pay the remaining $8,000 ($5,000 plus $3,000 attorney fees) within 30 days and if he failed to do so, he shall serve the 30-day jail sentence.

## ASSIGNMENTS OF ERROR

Louis assigns that the district court erred by (1) finding Louis in contempt as evidence showed that there was no VA pension that could be divided, (2) finding Louis in willful and contumacious contempt, (3) awarding Nancy $30,000 in back pay because the award was unjust and outside of Louis's ability to pay, and (4) receiving Exhibit 9 into evidence and awarding Nancy attorney's fees.

## STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *State on behalf of Mariah B. & Renee B. v. Kyle B.*, 298 Neb. 759, 906 N.W.2d 17 (2018). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016).

Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Davidson v. Davidson*, 254 Neb. 357, 576 N.W.2d 779 (1998).

## ANALYSIS

*Finding of Contempt.*

Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016). These proceedings may both compel obedience to orders and administer the remedies to which the court has found the parties

to be entitled. *Id.* Willful disobedience is an essential element of contempt; "willful" means the violation was committed intentionally, with knowledge that the act violated the order. *Id.*

Louis first argues that he did not receive a VA pension benefit. Rather, he asserts that he only received disability benefits, which were not divisible, and therefore he did not act willfully in failing to comply with the decree. In other words, he essentially argues that he was unable to comply with the decree. Second, Louis argues that any failure to comply with the decree was not willful as he attempted to assist the attorneys in preparing the QDRO. We address these assigned errors and arguments together. For the reasons that follow, we reject Louis' arguments.

In the original divorce action, Louis agreed to the terms of the decree, including the provision that required division of his VA pension benefits and his obligation to prepare a QDRO to effectuate the division. Louis did not appeal from the decree. Further, over the lengthy span of time during which Nancy was attempting to obtain the QDRO and the payments to which she was entitled, Louis did not assert the position that his payments were not divisible. He did not assert this position until the present contempt proceedings. At no time did Louis seek to modify the decree to assert his claim that his payments are indivisible disability benefits. Further, the OPM approved the division of payments once the proper QDRO was filed, and Nancy now receives the monthly portion she is entitled to under the decree. Thus, Louis has failed to establish that his failure to comply with the decree was somehow excused by his claim that his payments are not divisible, which claim was not asserted until the present contempt proceeding.

It is also clear that Louis' failure to comply with the court order was willful. Louis was aware of his obligation under the decree to divide his VA benefits with Nancy and to prepare a QDRO to effectuate the division. He admitted that he did not succeed in having an acceptable QDRO prepared and that he received 100 percent of the benefits from the time the decree was entered until Nancy finally began receiving the benefits in 2016. As such, the evidence supported a conclusion that Louis' acts were intentional and with knowledge that he violated the decree.

The district court did not abuse its discretion in finding Louis in willful contempt for failing to comply with the decree requiring him to provide Nancy with a portion of his VA benefits and to prepare a QDRO to effectuate the division.

*Back Pay.*

We have recognized that when a purge order involves payment of money, the sum required to purge oneself of contempt must be within the contemnor's present ability to pay, taking into consideration the assets and financial condition of the contemnor and his or her ability to raise money. *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016). When the sum required falls outside of the contemnor's ability to pay, the contempt becomes punitive rather than coercive. *Id.* In order for the punishment to retain its civil character, the contemnor must, at the time the sanction is imposed, have the ability to purge the contempt by compliance and either avert punishment or, at any time, bring it to an end. *Id.*

Louis asserts that he does not have the present ability to pay the purge order and that therefore, the district court erred in awarding back pay. We disagree. For 6 years, Louis received the entire 100 percent of his VA payments, which prior to 2016, were in the approximate amount of $20,194 to $25,608 per year. In March 2017, the monthly distribution of Louis' VA benefits

was $2,140, which was after Nancy began receiving her portion of the benefits. Louis also received Social Security payments of approximately $643 per month in 2017. Louis did not adduce evidence about his monthly expenses or show that the income is insufficient to cover his current expenses. Louis testified that he did not have a lot of money in the bank. Louis' bank statement from March 7 through April 6, 2017, showed deposits of $2,783 and withdrawals of $2,127, with an ending balance of $3,593. His bank statement from February 7 through March 6, 2017, shows the same amount of deposits, with $2,906 in withdrawals, and an ending balance of $2,938. In addition, Louis owns a home currently valued at $256,000, which he has owned since 1997. No evidence was adduced regarding whether there is a mortgage on the home and, if so, the balance due. We also note that after Louis' interlocutory appeal, Louis agreed to release the $25,000 security bond to Nancy in lieu of an immediate jail sentence and that the amount of judgment and attorney fees remaining totaled $8,000. On this record, we cannot say that the court's purge order was beyond Louis' ability to pay. The district court did not abuse its discretion in determining the purge order.

*Exhibit 9 and Award of Attorney Fees.*

Louis lastly argues that the district court erred in receiving exhibit 9, the affidavit of attorney fees incurred by Nancy, and in its award of attorney fees. However, Louis provides little argument other than attorney fees should not be awarded because the court erred in its finding of contempt. Reasonable attorney fees may be assessed in a civil contempt proceeding. *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018). When an attorney fee is authorized, the amount of the fee is addressed to the trial court's discretion, and its ruling will not be disturbed on appeal absent an abuse of discretion. *Gonzalez v. Union Pacific RR. Co.*, 282 Neb. 47, 803 N.W.2d 424 (2011).

Because we have found no abuse of discretion in the court's contempt finding, its award of attorney fees was likewise not an abuse of discretion. Further, we find no error in the court's admission of exhibit 9 in its determination of a reasonable attorney fee. While some of the fees shown on exhibit 9 were incurred in connection with previous show cause applications that were dismissed along the way, the fees nevertheless related to work necessary to obtain Nancy's portion of the VA benefits. Finally, we note that the court did not award the entire sum of fees requested by Nancy.

The district court did not abuse its discretion in the receipt of exhibit 9 or its award of attorney fees.

CONCLUSION

We conclude that the district court did not abuse its discretion in finding Louis in willful contempt because he failed to comply with the decree requiring him to pay a portion of his VA benefits to Nancy. Further, we conclude that the district court did not abuse its discretion in awarding back pay and attorney fees in the purge order. We affirm the judgment of the district court.

AFFIRMED.