IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


BLAINE V. BLAINE


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STEPHANIE BLAINE, APPELLANT,

V,

DENNIS BLAINE, APPELLEE.


Filed December 8, 2020.    No. A-20-192.


Appeal from the District Court for Douglas County: GREGORY M. SCHATZ, Judge. Affirmed.

Stephanie Blaine, pro se.

Michael J. Matukewicz and Andrew M. Hollingsead, of Liakos & Matukewicz, L.L.C., for appellee.


BISHOP, ARTERBURN, and WELCH, Judges.

BISHOP, Judge.

## INTRODUCTION

Stephanie Blaine, pro se, appeals from an order of the Douglas County District Court denying her application to hold Dennis Blaine in contempt for failing to satisfy his obligations pursuant to a divorce decree entered in 1998 and subsequent orders of the district court. We affirm.

## BACKGROUND

### DIVORCE DECREE AND PREVIOUS PROCEEDINGS

Stephanie and Dennis married in 1972 and divorced pursuant to a decree of dissolution entered on October 5, 1998. The decree ordered the division of the marital estate, including the equal division of three particular retirement accounts. A Qualified Domestic Relations Order (QDRO) was to be prepared for each account. A couple months after entry of the decree, a hearing

was held on December 16 due to Dennis' failure to divide the three retirement accounts pursuant to the decree. One QDRO was entered in the Douglas County District Court in February 2001.

Upon application by Stephanie in July 2004, the district court found Dennis in contempt in July 2006 for failing to prepare a sufficient number of QDROs to comply with the division of the marital estate as set forth in the decree of dissolution. However, the court also concluded that Stephanie was only entitled to one-half the current value of the accounts rather than the value of the accounts at the time of the decree. Dennis subsequently purged this contempt by preparing the QDROs, and Stephanie appealed the issue of the valuation of the retirement accounts to the Nebraska Supreme Court. See *Blaine v. Blaine*, 275 Neb. 87, 744 N.W.2d 444 (2008). The Supreme Court concluded that the value of the disputed accounts should have been determined as of February 3, 1998, and also directed the district court to supervise the entry of QDROs transferring such value to Stephanie. See *id*. The matter was remanded, and in an order by the Douglas County District Court entered in June 2008, Dennis was again found in contempt. Following this order, Dennis filed for bankruptcy on September 29, but his petition was subsequently dismissed.

Stephanie initiated further proceedings to enforce the initial decree of dissolution and subsequent orders. Hearings to determine Dennis' compliance with the decree and subsequent orders were held in February and November 2010. On January 10, 2011, the district court entered an order providing that Dennis had paid Stephanie $106,507.93 and still owed her $271,743.85 pursuant to the decree of dissolution, $194,371.50 in postjudgment interest accruing at the rate of 7.73 percent, and $20,019.42 in attorney fees. The order prohibited Dennis from transferring, encumbering, hypothecating, concealing, or otherwise disposing of real or personal property worth $500 or more unless such action would be approved by the court. The court also determined that Dennis was not required to have the personal property he had previously gifted away returned to him in order to satisfy his obligations. Further, the order permitted Stephanie to retain a forensic accountant to examine and investigate Dennis' currently possessed assets and any transfers of substantial assets since the 1998 decree of dissolution. Neither party appealed this order.

CURRENT APPEAL

On September 21, 2018, Stephanie again filed an "Application for Order to Show Cause" with the district court, seeking satisfaction of Dennis' outstanding obligations pursuant to the January 2011 order in addition to other requested relief. The district court held several hearings through January 17, 2020, where the parties testified and offered evidence to the court. Stephanie testified as to discrepancies she found in Dennis' financial documentation and the history between the parties relating to the divorce that caused her to suspect Dennis' deliberate avoidance of the obligations imposed by the decree of dissolution and subsequent orders. Conversely, Dennis testified as to his efforts to comply with the district court's orders and provided evidence of his present financial circumstances.

In an order entered on February 12, 2020, the district court declined to find Dennis in contempt of court. The court determined Stephanie failed to prove by clear and convincing evidence that Dennis was in willful disobedience of the previous decree and orders entered by the court. In support of this finding, the court noted:

[Stephanie] offered no evidence that she had pursued execution proceedings following [the January 2011] Order, nor that she had sought by subpoena information from any entity which might confirm her suspicions. Nor has [Stephanie] employed a forensic accountant, as provided for by [the judge] in his [January 2011] Order, to trace the transfer of [Dennis'] assets or to determine what assets he might have to satisfy the Judgment since entry of the Decree in 1998.

The court continued in finding that even if Stephanie had carried her burden to prove Dennis' willful disobedience by clear and convincing evidence, Dennis had "sufficiently raised and proven his inability to comply with the orders at issue" by offering "evidence as to his assets, expenses, sources of income, and good faith attempts to pay to [Stephanie] some funds owing under [the January 2011] Order." The court further identified Dennis' "difficulty in obtaining employment at age 70, and his willingness to dispose of some of his personal property to satisfy [the court's] judgment entered in 2011."

Although it declined to find Dennis in contempt of court, the district court found that Stephanie "may continue to pursue whatever legal remedy [is] available to her to collect on the judgment in question." Stephanie, pro se, timely appealed.

## ASSIGNMENTS OF ERROR

Stephanie, acting pro se, assigns six errors on appeal, which we summarize and restate as follows: the district court erred in (1) finding she failed to show by clear and convincing evidence that Dennis was in willful disobedience of previous district court orders; (2) finding that, even if willful disobedience had been proven, Dennis proved his present inability to comply with his obligations by a preponderance of the evidence; and (3) denying her requests for civil contempt sanctions, attorney fees, and other relief.

## STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which the trial court's (1) resolution of issues of law is reviewed de novo, (2) factual findings are reviewed for clear error, and (3) determinations of whether a party is in contempt and of the sanction to be imposed is reviewed for abuse of discretion. *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through the judicial system. *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016).

## ANALYSIS

### WILLFUL DISOBEDIENCE

Stephanie contends on appeal that the district court erred in finding that she had not proven Dennis' willful disobedience of previous court orders by clear and convincing evidence.

Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *Sickler v. Sickler, supra*. Willful disobedience is an essential element of contempt; "willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id.* Outside of statutory procedures imposing a different standard or an evidentiary presumption, the complainant must prove all elements of contempt by clear and convincing evidence. *Id.*

On appeal, Stephanie highlights her testimony and particular evidence offered to the district court concerning the histories of the parties relating to this case and discrepancies in Dennis' financial records that she claims establish Dennis' willful disobedience to the decree and orders entered by the court. Stephanie references the numerous proceedings that have occurred since the district court entered the decree of dissolution in 1998, including previous contempt proceedings and Dennis' bankruptcy petition. She further asserts that Dennis "has a 22 year verifiable history of funds that vanished" that he has not provided any accounting for, and that these discrepancies indicate Dennis' willful disobedience of the orders of the district court. Brief for appellant at 13. The assets and funds that Stephanie asserts have vanished include, among others, income of $978,019 from the sale of stock reflected in Dennis' 2004 tax return, an Omaha State Bank account valued at approximately $200,000 first disclosed as part of Dennis' bankruptcy action in 2008, two Roth IRA's cashed in 2007 and 2008 as reflected in Dennis' tax returns for 2007 and 2008, eight Robert Baird brokerage accounts that were all effectively depleted by 2009, and $100,000 in proceeds from life insurance policies. Unfortunately, the record does not provide insight into the ultimate disposition of these assets Stephanie claims have vanished, which Stephanie alleges is due to Dennis' efforts to conceal financial records from discovery. Stephanie also points out Dennis' testimony concerning conveyances totaling approximately $50,000 in monetary gifts to their son and daughter subsequent to the entry of the divorce decree.

In turn, Dennis asserts that he "has made substantial, reasonable efforts to comply with the Court's Orders." Brief for appellee at 7. He references his testimony and other documentation offered at trial as evidence of such efforts, which include the December 2010 sale of his Omaha home from which Stephanie received $78,377.51, monthly checks made by Dennis from March 2010 through January 2015 totaling $5,800 never cashed by Stephanie, Dennis' documented attempts to gain employment, and the transfer of Dennis' Pacific Life annuity to Stephanie pursuant to this case. As noted by the district court, Dennis has also offered to dispose of jewelry and apply the proceeds towards his obligations upon order by the court.

We acknowledge that Stephanie's assertions raise discrepancies in the record concerning the amounts she alleges have vanished and the sequence of events following the 1998 decree of dissolution. However, the mere existence of these discrepancies does not carry Stephanie's burden of proof in demonstrating Dennis' willful disobedience of court orders. Although Stephanie identified these discrepancies, she had the opportunity to utilize mechanisms and avenues set forth by the district court back in January 2011 so that she could confirm her suspicions, but she has not done so.

In addition, Dennis offered evidence of his efforts to meet the obligations as set forth previously. We also note that Dennis' transfers to their children occurred prior to any restriction on Dennis' ability to transfer or otherwise dispose of real or personal property. There is no question

that Dennis' efforts fall significantly short of the amounts ordered by the district court. We are not unsympathetic to Stephanie's position; however, the record before us does not sufficiently support the claim that Dennis' failure to satisfy his obligations since the January 2011 order was willful. Most of the assets described by Stephanie as vanishing appear to predate the January 2011 order, at which time the district court suggested that Stephanie retain a forensic accountant to provide an accounting of Dennis' transfer of all substantial assets since the divorce, including transfers to trusts, and to determine what assets Dennis possessed at that point in time that could be used to satisfy the judgment against him. And while the district court indicated that the first $5,000 needed for such a forensic accountant would be paid for from Stephanie's portion of the net proceeds of the sale of Dennis' residence, it left open for later determination any fees accrued in excess of that amount. Nothing in the record before us establishes that any such accounting was pursued which could have at least attempted to track Dennis' alleged voluntary dissipation of assets to willfully avoid paying amounts owed to Stephanie. We therefore cannot say the district court abused its discretion in finding that Stephanie failed to prove Dennis' willful disobedience by clear and convincing evidence.

## INABILITY TO COMPLY

Stephanie additionally asserts on appeal that the district court erred in finding that, even if she had shown Dennis' willful disobedience by clear and convincing evidence, Dennis proved his inability to comply by a preponderance of the evidence.

Upon the complainant's proof of willful disobedience by clear and convincing evidence, the burden shifts to the contemnor. See *Sickler v. Sickler, supra*. It is the contemnor who has the burden to assert and prove the inability to comply with the contempt order to avoid incarceration or to purge himself or herself of contempt. See *id*. A contemnor may defend against incarceration under a civil contempt order, but only upon a showing of such inability to comply with the order by a preponderance of the evidence. See *id.*

The sum required to purge oneself of contempt must be within the contemnor's present ability to pay, taking into consideration the assets and financial condition of the contemnor and his or her ability to raise money. See *id.* A past ability to comply with an order does not show a present ability to purge the contempt. *Id.* However, the contemnor's inability to comply cannot be voluntarily created, for example by not diligently seeking a job at one's earning potential. See *State on behalf of Mariah B. & Renee B. v. Kyle B.*, 298 Neb. 759, 906 N.W.2d 17 (2018).

As noted by the district court, Dennis offered testimony and evidence of his income, assets, expenditures, and liabilities. Dennis' testimony coupled with exhibits entered into evidence indicated that he did not own real estate or otherwise possess assets for investment or retirement at the time of the hearing. Dennis provided that his individual income at the time of the hearing was $1,827 solely from Social Security. Dennis has reported his continued efforts to locate employment to no success. Records from Citibank, American Express, and Bank of America indicate substantial outstanding liabilities that, as summarized in exhibit 21, were approximately $34,488 as of January 2020. Although the record is conflicted concerning Dennis' monthly balance as being either "in the red" or "in the black," Dennis testified that "with [his current wife's] income, [they] meet the monthly" requirements for their obligations.

- 5 -

While a contemnor's inability to pay cannot be voluntarily created, the record before us does not indicate Dennis voluntarily created his present inability to comply with the orders of the district court. As we noted earlier, with respect to the previously described discrepancies and funds that Stephanie alleges have vanished, the record offers no indication as to the cause or whether Dennis voluntarily created those discrepancies. To the extent Stephanie characterizes the $50,000 gifted by Dennis to their son and daughter as voluntarily creating his present inability to pay, we note that such gifts occurred over a decade ago and were not required to be returned to Dennis according to the district court's 2011 order, which was not appealed. We conclude the district court did not abuse its discretion in finding that, even if Dennis was in willful violation of the court's orders, Dennis proved by a preponderance of the evidence his present inability to comply with the orders.

### DENIAL OF SANCTIONS, ATTORNEY FEES, AND OTHER RELIEF

Stephanie argues the district court erred in denying the sanctions and relief requested in her Application for Order to Show Cause in the order entered on February 12, 2020.

Contempt proceedings may both compel obedience to orders and administer the remedies to which a court has found the parties to be entitled. *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016). In general, civil contempt sanctions are remedial if they coerce the contemnor's obedience for the benefit of a private party or compensate a complainant for losses sustained. *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), *disapproved on other grounds, Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). A coercive contempt sanction is conditioned upon the contemnor's continued noncompliance with a court order; i.e., the defendant is in a position to mitigate the sentence by complying with the court's order. See *id.*

As described above, we find that the district court did not abuse its discretion in finding that Dennis was not in willful disobedience to the court's orders and, even if he were, he had sufficiently proven his inability to comply with those orders. In light of these findings, incarcerating Dennis would not serve to compel his obedience pursuant to the aims of civil contempt, as he would not have the keys to his jail cell. See *Sickler v. Sickler, supra*. Similarly, as noted by the district court, Dennis' present financial inability to comply with the court's orders belies his ability to pay the monetary remedies that Stephanie argues for on appeal. We therefore find that the district court did not abuse its discretion in declining to incarcerate Dennis or impose other compensatory or remedial sanctions.

### CONCLUSION

For the reasons stated above, we affirm the order of the district court.

AFFIRMED.