IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

SMITH V. ROEMER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

FRAN A. SMITH, APPELLEE,

V.

MARK L. ROEMER, APPELLANT.

Filed January 31, 2023.    No. A-22-054.

Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge. Affirmed.

Bradley A. Sipp, for appellant.

Sheri A. Burkholder and Sam Baue, of McHenry, Haszard, Roth, Hupp, Burkholder, Blomenberg & Camplin, P.C., for appellee.

MOORE, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Mark L. Roemer appeals from the order of the Lancaster County District Court finding him in contempt of court for converting certain property awarded to Fran L. Smith under a decree dissolving their marriage and ordering him to pay $87,322.87 in damages incurred by Smith due to Roemer's noncompliance. We affirm.

## II. BACKGROUND

### 1. DECREE OF DISSOLUTION

Roemer and Smith were married in March 2007; no children were born of the marriage. In July 2019, Smith filed a complaint to dissolve their marriage, and on January 21, 2021, a decree of dissolution was entered by the district court. The decree incorporated a "Property Settlement Agreement" which awarded Smith certain farm real estate but permitted Roemer to remain on the

- 1 -

property until March 15. The agreement awarded Roemer $200,000 from Smith's "Molex 401(k) retirement account," subject to his "complete vacation of the real estate on or before March 15, 2021 and [his] compliance with section 12 of [the] [a]greement." Section 12.B. of the agreement awarded Smith "all of the remaining farm equipment subject to any existing liens" by Farm Credit Services of America (Farm Credit Services) that "may exist including but not limited to" various specified pieces of farming equipment. Section 12.B. further stated that Roemer "shall not remove or damage any of said equipment in any manner." Under the agreement, Smith was responsible for the debts related to the liens on the real estate and farming equipment. The parties' notarized signatures appear on the agreement.

## 2. MOTION FOR ORDER TO SHOW CAUSE

On April 30, 2021, Smith filed a motion for an order to show cause. Smith alleged that on March 2, Farm Credit Services arrived at the farm real estate awarded to Smith to collect the farming equipment on which it had a lien. After speaking with his attorney, Roemer, who still resided on the property, allowed Farm Credit Services to retrieve some, but not all, of the equipment. On March 15, Farm Credit Services returned to the farm real estate to pick up the remaining equipment that Roemer did not allow them to retrieve on March 2. Smith alleged that Farm Credit Services was not able to retrieve numerous specified pieces of equipment and it was found that "the tractor awarded to [Smith]" was damaged. Smith further alleged that Roemer failed to provide her with the "Weatherby 30-06 or [the] pistol" awarded to her under the agreement. Smith asked that any damages, costs, and attorney fees awarded be set off against the amount of her retirement account awarded to Roemer as set forth in the property settlement agreement.

On May 3, 2021, the district court issued an order to show cause as to why Roemer should not be held in contempt of court for violating the "Property Settlement Agreement." On September 14, Smith filed an "Amended Motion for Order to Show Cause," adding a "NewHolland NW325 SP Windrower" and removing the "John Derre [sic] 566 baler" from the list of equipment "not returned" to Smith.

## 3. EVIDENTIARY HEARING

The district court held an evidentiary hearing on the order to show cause on August 26 and October 20, 2021. Both parties testified, as did John Joseph Jolley, Jr., an account litigation officer for Farm Credit Services. Numerous exhibits were also received into evidence. We now set forth the evidence relevant to the issues on appeal.

### (a) Jolley's Testimony

Jolley, formerly a "partner" with an Omaha law firm, testified that he had been working for Farm Credit Services as an account litigation officer since 2016. He stated that he managed the loans that were in collection, "meaning that there's been a default and [Farm Credit Services] [is] moving forward with foreclosure or replevin" or when an obligor has filed a bankruptcy case. He stated that he was familiar with the loans owed to Farm Credit Services by Roemer and Smith, as well as their corporation, "Prairie Star Farms, LLC." He explained that they had loans secured by chattel collateral and Farm Credit Services had a "blanket chattel lien . . . on all chattels of"

Roemer, Smith, and Prairie Star Farms, LLC. He stated that the lien came into existence in 2015 or 2016 and that the lien was not released prior to the entry of the decree of dissolution.

Jolley testified that Smith filed for bankruptcy and, as part of the proceedings, Farm Credit Services obtained an "order in replevin" to take possession of the chattel collateral. In November 2020, Jolley accompanied "the Lancaster County Sheriff's Department" to serve the "order and writ of replevin" and "obtain possession of Farm Credit's chattel collateral." Attached to that order was a list received from Smith identifying what specific items of collateral were at the farm, but Jolley realized that "there was a lot more equipment" at the farm than had been listed in the replevin order. As a result, Jolley and Farm Credit Services' agents made an inventory of all the items present on the farm that would constitute Farm Credit Services' collateral, "meaning it was machinery or equipment used in the farming operation" that was not on the list attached to the replevin order. This inventory was received as exhibit 11. Jolley stated that he personally saw each piece of equipment inventoried except the "windrower."

Jolley testified that on March 2, 2021, he along with "eight or nine MRK Transport employees" arrived to retrieve the equipment that had been inventoried in November 2020; MRK transport is a "repo company." When he arrived at the farm, Roemer did not allow Jolley and the employees to take any of the equipment. Jolley and the employees remained on the premises awaiting permission to enter the property for 4 hours while Roemer contacted his attorney. Jolley testified that Roemer then allowed Jolley and the employees to enter and take possession of much of the farm equipment. Jolley stated that, but for the 4-hour delay on March 2, he and the MRK Transport employees could have completed their work in 2 days—March 2 and 3. Instead, they had to return on March 4 to take the rest of the equipment. Additionally, Roemer did not allow them to take the tractor that was on the property because he claimed that he had a right to use the tractor until March 15 pursuant to the "Property Settlement Agreement." As a result, Jolley and the crew had to return on March 15 to take possession of the tractor. Jolley testified that because of the delays, Farm Credit Services incurred an additional $13,900 in costs, which Smith paid.

Jolley further testified that not all of the equipment that had been inventoried in November 2020 was found on the property in March 2021. Jolley prepared a list of items that were "missing," which the court received into evidence. The list included every piece of equipment listed in Smith's "Amended Motion for Order to Show Cause."

Jolley also testified about the fair market value of the "missing" equipment. During direct examination of Jolley by Smith's counsel, the following colloquy took place.

> Q. [] I'm going to show you what's been marked as Exhibit No. 3. Exhibit No. 3 is an appraisal list from Ford and Ford Auctioneers of the items that Ms. Smith is alleging to the Court that are missing. How many auctions, farm auctions of equipment a year do you attend?
>
> A. Well, I don't attend a lot in person. I view a lot online, and I do that on a weekly basis. I sell machinery equipment on auction probably 10 to 20 times a year.
>
> Q. Is it fair to say that you're familiar with the pricing on used farm equipment?
>
> A. Yes.
>
> Q. And looking at the farm equipment, and knowing your observations of the farm equipment that is at issue here today, do you believe that the fair market values assigned on Exhibit 3 are fair and reasonable?

[Counsel for Roemer]: Objection, foundation.

THE COURT: Overruled.

A. Yes, I believe they are reasonable.

Q. [] And are they fair market values that are consistent with auctions that [you] observe on . . . a weekly basis?

A. They are.

[Counsel for Smith]: I would offer again Exhibit No. 3.

[Counsel for Roemer]: Objection, foundation.

THE COURT: Overruled. Exhibit 3 is received.

Exhibit 3 assigns values to the farming equipment, a ".30-06 Weatherby rifle," and a ".38 caliber revolver", totaling $69,745. It includes costs for the farming equipment designated as "missing" by Jolley and $2,000 for "tractor damage[]." On cross-examination, Jolley stated that his testimony regarding the values assigned to the ".30-06 Weatherby rifle" and the ".38 caliber revolver" was based only on his "personal knowledge" and that he did not personally see the two firearms.

(b) Roemer's Testimony

Roemer testified that although his signature appeared on the "Property Settlement Agreement," he did not agree to the contents of the agreement. He said that he had requested that certain revisions be made to the agreement. Roemer did not testify as to what the requested revisions were, but he stated that he informed his previous attorney that he "need[ed] equipment to produce a living." Additionally, Roemer stated that it was "not [his] understanding" that Smith was awarded the equipment on which Farm Credit Services had a lien. Roemer stated that his previous attorney assured him that his requested changes were made to the agreement and then presented him with the signature page of the agreement to sign. Roemer signed the agreement without knowledge that the requested changes had not been made to the document.

Roemer testified that, pursuant to the "Property Settlement Agreement," he was still residing on the farm until March 15, 2021, and that he was present on March 2 when "Farm Credit [Services] representatives" arrived to take possession of the equipment. He stated that "[t]hey had no business being there until after March 15[]." Roemer testified that after speaking with his attorney, he allowed Farm Credit Services to take possession of certain equipment. He did not allow Farm Credit Services to take the tractor on March 2, because he believed that the agreement provided that he "had the use of [the] tractor until [he] was done moving off the property." However, Roemer admitted that the "Property Settlement Agreement" incorporated into the decree entered on January 21, 2021, did not award him use of the tractor.

Roemer admitted that Smith was awarded the pieces of equipment listed in Smith's "Amended Motion for Order to Show Cause," that he had sold, traded, or kept the listed farming equipment—except the "alleyways," 45 "feed bunks," and the "Westendorf skid loader plate"— and that he did not provide the proceeds of any sales directly to Smith or Farm Credit Services. Roemer stated that he and Smith never owned 45 "feed bunks" and he left the "alleyways" and "Westendorf skid loader plate" on the farm. Roemer admitted that Smith was awarded a

- 4 -

"Weatherby 30-06 rifle" and that he did not give it to her. When asked whether Smith was awarded a "pistol," he stated that he "[did] not know what that is."

Roemer also testified about the condition and value of the equipment listed in the "Amended Motion for Order to Show Cause." He stated that he was familiar with all the farming equipment and the "Weatherby 30-06 rifle." He testified that nearly all the equipment was in such poor condition that it could only be worth its "scrap value." Roemer assigned a value of $5 to $275 to most of the equipment and $1,000 for the "Schuler feed wagon." He further stated that the "New Holland HW325SQ windrower" was "in non-useable condition" and that he was "waiting [for it] to be repaired due to damages done by an individual that stole it in July." Roemer also testified that the tractor was damaged in a windstorm.

### (c) Smith's Testimony

Smith testified that Farm Credit Services had a "blanket lien" on all the equipment on the farm and that, under the decree, she was awarded any equipment on which Farm Credit Services had a lien. She stated that she did not permit Roemer to sell, trade, or give away any equipment awarded to her under the "Property Settlement Agreement." She stated that she saw the tractor damage and did not believe that it could have been caused by a windstorm. She further stated that she twice entered the farm during the pendency of the divorce proceedings but did not remove any equipment from the property. Smith further testified that she had incurred attorney fees and costs because of Roemer's noncompliance with the decree.

### 4. Disposition Hearing and Order Finding Contempt

On December 29, 2021, the district court held a disposition hearing, during which it stated that it found that Smith "met her burden of proof" and that Roemer "willfully violated the Court's order." The court stated that it found Smith's testimony to be credible. It also found Jolley's testimony to be credible since the debt to Farm Credit Services was satisfied and it had no financial interest in the litigation. However, the court stated that it did not find Roemer's testimony to be credible. Specifically, the court stated that Roemer is "much too intelligent and savvy" to sign a document without understanding its significance.

The district court further stated that Smith did not meet her burden of proof "with respect to the rifle or the revolver." But the court found that Smith did meet her burden of proof as to the "items removed from the property, their fair market value, and the additional expenses that she incurred because of the willful violation." The court indicated that it would "therefore enter[] a money judgment against [Roemer] . . . in the amount of $87,322.87." The judgment could be "satisfied by reducing [Roemer's] interest in the 401k Molex . . . that belongs to [Smith]." That same day, the court entered an order finding that there was clear and convincing evidence that Roemer had willfully violated the decree of dissolution, causing Smith $87,322.87 in damages, and deducting the amount of damages from Roemer's interest in Smith's "401k Molex retirement account."

### III. ASSIGNMENTS OF ERROR

Roemer assigns that the district court erred in (1) finding him in contempt because "he was unaware of the specific terms of the decree that had been entered" and "much of the property that

formed the basis for the alleged contempt had already been disposed of at the time the parties' marriage was dissolved or was sold by [Smith's] creditor," and (2) "making an award of damages that lacked foundation."

## IV. STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which the trial court's (1) resolution of issues of law is reviewed de novo, (2) factual findings are reviewed for clear error, and (3) determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *Johnson v. Johnson*, 308 Neb. 623, 956 N.W.2d 261 (2021).

An appellate court reviews the trial court's conclusions with regard to evidentiary foundation for an abuse of discretion. *Midland Properties v. Wells Fargo*, 296 Neb. 407, 893 N.W.2d 460 (2017).

## V. ANALYSIS

### 1. WILLFUL VIOLATION OF DECREE

We initially observe that in Roemer's first assignment of error, he asserts that "much of the property that formed the basis for the alleged contempt had already been disposed of at the time the parties'[ ] marriage was dissolved or was sold by [Smith's] creditor." Brief of appellant at 5. However, Roemer fails to provide any argument in support of this contention. As such, we need not address it. See *TNT Cattle Co. v. Fife*, 304 Neb. 890, 937 N.W.2d 811 (2020) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

Accordingly, we address only that portion of Roemer's first assigned error which contends that the district court "erred by holding [Roemer] in contempt as he was unaware of the specific terms of the decree that had been entered." Brief for appellant at 5. Roemer contends that he could not have willfully violated the decree of dissolution entered January 21, 2021, since "he was not aware of the terms contained in the [d]ecree and settlement agreement." *Id*. at 8. The only evidence supporting Roemer's claim that he was not aware of the terms of the agreement is his own testimony that he signed the agreement under the belief that certain changes were made to the agreement which would allow him to retain use or ownership of certain equipment. However, the district court found that Roemer's testimony was not credible, specifically with regard to his knowledge of the terms of the decree. Further, as a general rule, every person of mature age, able to read and write, who has an opportunity to read an instrument, and executes the same is presumed to know the contents of instruments signed and is estopped from denying the contents thereof. See *Prudential Ins. Co. v. Holliday*, 191 Neb. 144, 214 N.W.2d 273 (1974). We next consider whether the evidence supported the court's conclusion that Roemer willfully violated the parties' decree.

Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016). Civil contempt requires willful disobedience as an essential element. *Id.* Willful means the violation was committed intentionally, with knowledge that the act violated the court order. *Id.* Willfulness is a factual determination to be reviewed for clear error. *State on behalf of Mariah B. & Renee B. v. Kyle B.*, 298 Neb. 759, 906

- 6 -

N.W.2d 17 (2018). Outside of statutory procedures imposing a different standard or an evidentiary presumption, all elements of contempt must be proved by the complainant by clear and convincing evidence and without any presumptions. *Id.*

Upon our review of the record, we conclude the district court properly found there was clear and convincing evidence that Roemer willfully violated the decree entered on January 21, 2021. The decree incorporated the parties' "Property Settlement Agreement," which stated that Smith "shall be awarded all . . . farm equipment subject to any existing liens by Farm Credit Services of America." Jolley and Smith testified that there was a "blanket lien" on all the farming equipment on the property. Jolley testified that in November 2020, he inventoried the farming equipment on which Farm Credit Services had a lien and that Roemer was present on the property when he conducted the inventory. Additionally, the agreement specifically enumerated almost all the equipment which Jolley testified was "missing." Roemer himself admitted that, under the decree, Smith was awarded the pieces of equipment listed in her "Amended Motion for Order to Show Cause" and that he sold, traded, or kept most of the listed farming equipment. Roemer also admitted that he signed the "Property Settlement Agreement." The evidence demonstrates that Roemer had notice that the equipment was awarded to Smith and that he nevertheless disposed of it.

The district court did not abuse its discretion in finding Roemer in contempt of court.

2. FOUNDATION FOR EXHIBIT 3

Roemer's second assigned error claims the district court "erred in making an award of damages that lacked foundation." Brief for appellant at 5. He argues that "the valuations used by the Court in determining damages lacked sufficient foundation." *Id*. at 8. He claims that Smith's exhibit 3 "was an appraisal from Ford & Ford Auctioneers stating the alleged amount that certain property was worth which amounted to the vast majority of damages claimed by [Smith]." *Id*. He takes issue with the court admitting the exhibit over Roemer's foundational objection when the exhibit was offered "through a representative of [Smith's] lender." *Id*. He claims that "[t]he use of this exhibit and the associated amounts were without adequate foundation and should be disregarded." *Id*. That is the full extent of Roemer's argument in support of this assigned error. He provides no discussion as to why foundation for the exhibit was inadequate. As we stated previously, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. See *TNT Cattle Co. v. Fife, supra*. That said, this court can, in its discretion, elect to address an insufficiently argued assigned error, and given the significant amount in damages ordered against Roemer in the underlying contempt action, we find it appropriate to do so here.

In the colloquy between Smith's counsel and Jolley set forth earlier in this opinion, Jolley was specifically asked about exhibit 3, which was identified as an appraisal list from Ford and Ford Auctioneers of the items Smith claimed to be missing. Jolley testified that he inventoried the equipment present on the farm in November 2020 and that he personally observed all the inventoried farming equipment, except the "windrower." Jolley further stated that he was "familiar with the pricing on used farm equipment" because he views farm auctions "on a weekly basis" and that he sells equipment "10 to 20 times a year." Jolley was asked whether, "knowing [his] observations of the farm equipment that is at issue . . . [did he] believe that the fair market values

assigned on Exhibit 3 are fair and reasonable." After a foundation objection was overruled by the district court, Jolley responded, "Yes, I believe they are reasonable." When asked whether the values assigned "are consistent with auctions that [he] observe[s] on . . . a weekly basis," he stated that "[t]hey are." After this line of questioning, exhibit 3 was offered into evidence and received over Roemer's foundation objection. On cross-examination by Roemer's counsel, Jolley was asked if the values contained on exhibit 3 were fair and reasonable because he "physically saw these items on the property in November?" Jolley responded that seeing the items in November had "no correlation" to why he believed the values to be reasonable; rather, he explained that the values were reasonable because they were "a reasonable estimation of value for each specific piece."

The Nebraska Evidence Rules "apply generally to all civil and criminal proceedings, including contempt proceedings." See Neb. Rev. Stat. § 27-1101 (Reissue 2016). In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by said rules; however, judicial discretion is involved when the rules make such discretion a factor in determining admissibility. See *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998).

It is within the trial court's discretion to determine if there is sufficient foundation for a witness to give their opinion about an issue in question. See *id.* A person shown to be familiar with property and its fair and reasonable market value is competent to testify as to such value; moreover, the qualifications of a witness to give testimony as to the value of property is subject to the discretion of the trial court and a ruling thereon will only be disturbed when clearly wrong. *Borden v. General Insurance Co.*, 157 Neb. 98, 59 N.W.2d 141 (1953).

Given the absence of any argument by Roemer as to why foundation was lacking, we can only presume Roemer takes issue with the admission of exhibit 3 based upon a witness other than the appraiser from Ford and Ford Auctioneers laying foundation for the exhibit. However, while it is evident that exhibit 3 was not authored by Jolley, Jolley essentially incorporated the values listed in that document into his own testimonial valuation of the missing equipment. His testimony was based upon his familiarity with and personal knowledge of the equipment at issue, as well as the state of the market for such equipment. Thus, the district court could properly consider the valuations set out in exhibit 3 as valuations endorsed by Jolley.

The record indicates that the district court properly considered the values set out in exhibit 3 in conjunction with Jolley's testimony. At the disposition hearing, the court stated that it would exclude the "Weatherby 30-06" and the ".38 caliber revolver" from its calculation of damages because Smith "did not meet her burden of proof with respect to the [two firearms]." These were the only two items that Jolley did not personally observe and only had "personal knowledge" as to fair market value. In its "Order Finding Contempt," the court deducted $950 from the amount requested by Smith, which corresponds with the combined values of $500 and $450 respectively assigned to the "Weatherby 30-06" and the ".38 caliber revolver" in exhibit 3.

We cannot say that the district court abused its discretion in admitting exhibit 3 into evidence in light of Jolley's adoption of the reasonableness of the values contained therein through his testimony as described above.

## VI. CONCLUSION

For the reasons set forth above, we affirm the district court's December 29, 2021, order.

AFFIRMED.