IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

CZARNICK V. RIED

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KELLI R. CZARNICK, APPELLANT,

V.

BRIAN W. RIED, APPELLEE.

Filed February 4, 2025.    No. A-23-1024.

Appeal from the District Court for Hall County: ANDREW C. BUTLER, Judge. Affirmed.

Kelli Czarnick, pro se.

Eddy M. Rodell for appellee.

MOORE, PIRTLE, and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

The Hall County District Court declined to hold Kelli R. Czarnick in contempt of court for withholding parenting time from Brian W. Ried on three separate weekends. However, it ordered three weekends of makeup parenting time to be exercised before the end of the 2023-2024 school year. If the parties could not agree on dates, the court stated it would decide for them at a hearing on January 10, 2024.

Although not held in contempt, Kelli, pro se, appeals. She claims the district court erred in ordering makeup parenting time, interpreting the parties' summer parenting plan, not considering the bests interests of the children, and displaying bias towards her. We affirm the district court's November 16, 2023, order resolving the contempt action.

- 1 -

## II. BACKGROUND

### 1. PARENTING PLAN

On August 30, 2021, the district court entered a decree dissolving the parties' marriage. A parenting plan regarding their two daughters, Berklee R. (born in 2015) and Kaia R. (born in 2017), was incorporated into the decree by reference. Kelli and Brian were awarded joint legal custody of their children, with Kelli having the "final decision concerning the parenting functions necessary to raising the children." Kelli was awarded primary physical custody, subject to Brian's parenting time. Brian was granted parenting time every other weekend from Friday at 5 p.m. until Sunday at 5 p.m.; both times were later modified to 6 p.m. by mutual agreement. Kelli lives in Grand Island, Nebraska, while Brian lives in Nebraska City, Nebraska. Kelli drives the children to Nebraska City for the commencement of Brian's parenting time, and Brian returns them to Grand Island. (According to Brian, it is approximately 2 hours and 15 minutes between the parties' homes.)

On May 24, 2023, Brian filed a motion and affidavit for an order to show cause, requesting that the district court hold Kelli in contempt for willfully withholding his parenting time in October 2022, April 2023, and May 2023.

### 2. SHOW CAUSE HEARING

A show cause hearing was held on November 6, 2023. Both Kelli and Brian testified. In addition, numerous exhibits were received into evidence, including the parties' 2021 parenting plan and various messages from "Our Family Wizard," a coparenting communication application. A summary of the evidence follows.

### (a) October 2022

Brian was scheduled to have parenting time on the weekend of October 21 to 23, 2022. However, Kaia was ill with strep throat and oral thrush. She missed school that entire week due to her illness, and there was a possibility that she would need to go to the emergency room. Kelli kept Brian informed about Kaia's condition throughout the week, including sending Brian a picture of Kaia's mouth at Brian's request. The parties agreed that the children would not travel to Nebraska City that weekend due to the illness. On Thursday, October 20, Kelli messaged Brian, suggesting Brian "come to Grand Island this weekend." Brian responded, "That will not work, as I have prior commitments here. I will let the girls stay with you this weekend and will take them the next 2 weekends. I will take them October 28–30 and then my scheduled parenting time November 4–6[]." Kelli responded to Brian on the morning of Friday, October 21. She told Brian that he "cannot just demand specific changes to parenting time," to which Brian replied, "We will just keep the regular parenting schedule and I will see the girls tonight at 6:00."

Later that day, Brian messaged Kelli, "It's 6:25 and the girls have not arrived. When will they be to my house?" At 6:36 p.m., Kelli responded, "[T]he last message I received from you stated to have the girls stay here because of how sick Kaia has been." Shortly thereafter, Brian called the Grand Island Police Department to do a welfare check on the children. Brian testified that he called for a welfare check "[b]ecause the girls did not show up." However, he admitted that

he called the police after he received Kelli's message explaining why the children were not at his house.

Both parties agreed that Brian did not receive parenting time with either child the weekend of October 21 to 23, 2022. Although Berklee was not sick, Brian admitted that he did not request parenting time with just Berklee that weekend.

The following week, Kelli reached out to Brian to arrange makeup parenting time for when Kaia was sick. She said that she could drop the children off a couple of hours early on Friday, October 28, on the condition that they be returned by noon on Sunday. She testified that the girls had a birthday party and dance rehearsal scheduled that day. She told Brian that she "likely" could have the children in Nebraska City by 3:30 or 4 p.m. on Friday. Brian pointed out that the court-ordered schedule is from Friday at 6 p.m. until Sunday at 6 p.m. He also told Kelli that he would not be able to return the children by noon on Sunday because they go to church at 11:30 a.m., and the drive to Grand Island is approximately 2 hours and 15 minutes. As such, Brian did not receive makeup parenting time for the weekend of October 21 to 23, 2022.

### (b) April 2023

Berklee participated in a dance competition in Rochester, Minnesota, on April 28 and 29, 2023, and both parties attended. Although Brian was scheduled to have the children that weekend, it is undisputed that he did not receive any parenting time.

Brian testified that he arrived in Rochester on Thursday, April 27, 2023, and attended Berklee's competition on Friday around 5:45 p.m. However, Kelli did not allow him to take either child after the competition. Brian explained that Kelli "wanted Berklee on Saturday morning at 10:15 or before to do her hair. And Berklee did not have to be at her competition until noon to practice, with a 1:14 compete time." Brian told Kelli that he "would have her there at 11:30 on Saturday." However, this "wasn't acceptable to [Kelli]," who sent the following message:

> As you will not allow Berklee to be ready to compete on time, [she and Kaia] will not be able to attend parenting time this weekend. As stated, it will take approximately 45 minutes to get her ready. This is about Berklee and her competition, not you or me or whose "time" it is. It's the girls' time. Per the court order and [the] Nebraska Parenting Act, the best interest of the child is paramount in all decisions.

Kelli further stated, "Please ensure you do not approach me or my family at [the] event this weekend."

Brian attended Berklee's competition on Saturday, April 29, at 1:14 p.m. but, once again, he did not receive parenting time thereafter. He returned home to Nebraska City without the children on Sunday. Brian testified that he did not receive any makeup parenting time for that weekend but admitted that he did not request any.

Brian acknowledged that Kelli began discussing Berklee's competitions with him in April 2022 and that he received Berklee's competition schedule later that year in October. He stated that he could not recall whether he had responded to Kelli's messages regarding the competitions. Nonetheless, he was aware that some of the competitions would take place on his weekends. Brian further stated that Kelli reached out to him in December 2022 about his travel plans for the dance

competition during the weekend at issue. He testified, "I don't know why I need to provide [Kelli] with my travel[] plans when it's my weekend. The girls will be there if they're scheduled to be there." So, the only information he gave her was that he planned to attend the competition.

Brian also admitted that Kelli has previously worked with him to ensure he received parenting time during competition weekends. For example, in February 2023, the parties switched weekends so that Brian did not have to spend most of his parenting time driving the children to Berklee's dance competition. Additionally, during one of Kelli's weekends in March 2023, she offered for Brian to take their children to the Mall of America so that he could spend time with them while attending a competition.

Kelli testified that she attempted to communicate with Brian "several times in 2022" to figure out how their schedule was going to work with Berklee's dance competitions. However, in many instances, Brian failed to respond. Instead, he stated that they would need to address the issue at mediation.

As the weekend at issue approached, Kelli testified that Brian still had not communicated his plans with her. She "didn't know when he'd be [at the competition]" or "what his intentions were." Kelli testified that she had another child competing in the dance competition at 11 a.m. on that Saturday. So, on Friday, she asked Brian to drop Berklee off at her hotel room on Saturday at 8:15 a.m. or, alternatively, at the convention center by 10:15 a.m. to give her time to do Berklee's hair and makeup. However, Brian "didn't care that [she] had other commitments" and refused to drop Berklee off by 10:15 a.m. As a result, Kelli did not send the girls with Brian after the competition on Friday.

Kelli believed it was in the children's "best interests" not to go with Brian that weekend. She also did not "feel like [she] intentionally ignored the [parenting plan]." She explained that Berklee tends to get "very anxious" and "stressed out." She referred to an incident where Brian did not allow her to get Berklee ready for a gymnastics competition, which caused Berklee to be "extremely upset." Kelli further testified that Kaia is "scared" to go with Brian. She stated, "Every time that Kaia leaves, she cries. She's scared to go. The only way I can get her to go is with Berklee, and I don't feel it's in the best interest[s] of the children to split them up when it's that traumatizing to the child."

### (c) May 2023

The last weekend disputed by the parties followed Mother's Day weekend. Because Kelli had the girls for that holiday, Brian expected to have them the following weekend of May 19 to 21, 2023. Kelli testified that based on her interpretation of the parenting plan, Brian could not have that weekend because it fell during the first week of summer following the end of the school year.

Pursuant to the parenting plan, Brian was granted 4 weeks of summer parenting time to be exercised in 1-week increments, "not to include the first week following the break from school, or one week prior to the start of school." Brian was to notify Kelli in writing, no later than April 1 of each calendar year, of the dates he would exercise summer parenting time and the general location and schedule of where the parenting time would take place.

Brian was also awarded alternating holidays. In odd-numbered years, he was awarded Memorial Day weekend, Labor Day weekend, and Christmas. In even-numbered years, he was

awarded Easter, the Fourth of July, Thanksgiving, and New Year's Day. In a separate section of the parenting plan, Brian was granted Father's Day weekend, while Kelli was granted Mother's Day weekend. The plan specifies:

> **Father's Day Weekend/Mother's Day Weekend:** Every year the Father shall have the children on Father's Day Weekend and the Mother shall have the children on Mother's Day Weekend. This holiday shall begin at 5:00 p.m. on Friday and end at 5:00 p.m. on the Sunday on which this holiday i[s] nationally observed.

The parenting plan also contains the following provision regarding holidays:

> **Holidays Take Priority:** This Holiday visitation schedule shall supersede the regular weekend and summer parenting time schedule. The regular visitation schedule will continue with the parent who did not have the minor children on the previous holiday and continue on from that point, alternating between the parents every other weekend.

At the show cause hearing, Kelli testified that the children got out of school on May 17, 2023, the Wednesday after Mother's Day weekend. This "started [their] summer parenting time." She explained that her interpretation of the parenting plan was that if Brian is not allowed to exercise summer parenting time the week following the break from school, "that would include [the] first weekend [following the break from school]." Kelli testified that they have "never done weekends" in the summer. She also stated that although the parenting plan does not specify the days for exchanges in the summer, they have "always" followed a Friday-to-Friday schedule. Overall, Kelli testified that she believed she followed the parenting plan schedule as written and that her actions were consistent with the way the parties have "traditionally" handled these holidays.

Brian testified that Mother's Day weekend was his "regularly scheduled weekend." However, he did not have the children the weekend of May 19 to 21, 2023, which was the weekend after Mother's Day. As such, he went three weekends in a row without seeing the children. Based on Brian's interpretation of the parenting plan, he believed that since Kelli's holiday "took [his] weekend," he "should have [had] the following weekend."

### 3. DISTRICT COURT'S ORDER

On November 16, 2023, the district court entered an order initially explaining a delay in the hearing on the order to show cause because there was a question of whether proper service was obtained on Kelli since Brian had "also filed a Complaint to Modify at the same time." Although the modification complaint is not contained in the record prepared for this appeal, it is worth noting that a separate modification action was proceeding simultaneously with the present contempt action. As far as the contempt action at issue in the present appeal, the trial court concluded that Brian and the girls did miss three weekends of parenting time together, but that Kelli did not willfully and contumaciously violate the parenting plan.

As for the October 2022 weekend when Kaia was ill with strep throat and thrush, the district court stated that travel was not in her best interests for the scheduled weekend. And while makeup parenting time the following weekend would have been "realistic and reasonable," the parties

"needed to communicate a plan." Further, it found no merit in the argument of sending one child and not the other "as the children are close in age and have a bond."

Regarding the weekend in April 2023 when Berklee had her dance competition in Minnesota, the district court found that Kelli "had reason to withhold the children . . . as the competition was most likely very important to Berklee," and Brian should have "taken into consideration the importance of the day for Berklee and the typical requirements for preparation of the competition," and Kelli should have "considered other alternatives that did not include putting her personal schedule with her other children at the competition in conflict" with Brian's parenting time.

Regarding the weekend following Mother's Day in May 2023, the district court found that the missed weekend occurred because of a "misunderstanding or differing interpretations of the parenting plan" and this was "not willful and contumacious." However, it found that "Mother's Day and Father's Day are holidays when evaluating the parenting plan" and "these specific weekends . . . take priority over a general parenting weekend." If Mother's Day weekend falls on the father's scheduled weekend, then the father would have parenting time the next weekend. It concluded that the summer parenting time language only prevented Brian from exercising one of his week-long summer parenting time options that first week after the school year ended; it did not prevent him from having parenting time that weekend. It pointed out that "this would have been a good opportunity for the parents to practice coparenting by finding an acceptable solution for both parents." It added, "The parents absolutely need to learn to co-parent with each other and work together to do what is best for these two children and put their own issues with each other aside."

The district court concluded that Kelli had not violated the court's order willfully and contumaciously in any of the above situations since there was "reason to withhold the children" from parenting time or there was a "legitimate misunderstanding or interpretation." It noted that "[c]ommunication is key" for the parties, and "at this point, neither one likes to communicate with each other for their own personal reasons." "Communication was possible for these parties regarding these three weekends, but each made their own respective decisions that frustrated this situation involving these weekends."

Although the district court did not find Kelli in contempt, it concluded that parenting time for the missed weekends needed to occur. The court stated that "[t]his order puts both parties on notice of what is expected and what needs to happen in the future. The Court also sits as a court of equity and has the power to develop an equitable remedy." It ordered,

> [T]he three missed weekends of visitation will be made up prior to the end of the 2023–2024 school year. The weekend visitations will occur as outlined in the parenting plan or as agreed to by the parties. The parties will need to agree to a plan on or before January 10, 2024[,] as to when [Brian] will exercise his missed visitation of three weekends. If the parties are unable to agree on the specific weekends for [Brian] to exercise his missed parenting time, then the Court will decide on the weekends of visitation at the hearing set on January 10, 2024[,] at 9:00 a.m.

The court ordered that Kelli was not found to be in willful and contumacious contempt of court, but that Brian's "missed visitation with his children" needed to be made up and "failure to allow

for the missed weekends of visitation may result in a contempt finding." The court then set "the case for status hearing and a pre-trial conference on **January 10, 2024[,] at 9:00 a.m.**" (Emphasis in original.)

Kelli appeals.

## III. ASSIGNMENTS OF ERROR

Kelli assigns that the district court erred in (1) "providing 'equitable relief' in the form of makeup time for all weekends that were missed with good cause"; (2) "changing the interpretation of the summer parenting plan"; (3) "not considering the 'best interest of the children' statute when providing for 'equitable relief'"; and (4) stating that neither parent "'likes to communicate with each other for their own personal reasons,' as this is defamatory to [Kelli] and shows clear bias based on facts to the contrary presented in the hearing."

## IV. STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which the trial court's (1) resolution of issues of law is reviewed de novo, (2) factual findings are reviewed for clear error, and (3) determinations of whether a party is in contempt and of the sanction imposed are reviewed for abuse of discretion. *Hawks v. Hawks*, 32 Neb. App. 70, 993 N.W.2d 688 (2023).

## V. ANALYSIS

### 1. JURISDICTION

We initially note that Brian filed a motion for summary disposition while this appeal was pending. He sought to dismiss the appeal for lack of jurisdiction, arguing that the "sole issue on appeal" was the district court's order providing "'equitable relief' in the form of makeup time for all weekends that were missed with good cause." Motion of appellee at 1. He pointed out that the parties were to agree on the makeup weekends, but if they could not, the court would do so at a scheduled hearing. He suggested that no substantial right would be significantly undermined by delaying the appeal until the matter was finally resolved by the district court. (He reiterated this position in the jurisdictional statement portion of his subsequently filed brief.) He alternatively argued in his motion that the appeal could be summarily affirmed since the questions presented by Kelli on appeal were unsubstantial and did not require further argument. We overruled Brian's motion for summary disposition but address the jurisdiction issue here.

As mentioned previously, Brian simultaneously filed a modification complaint and a motion for an order to show cause in May 2023. This appeal only relates to the order entered on November 16, 2023, addressing the contempt action. An order of contempt in a postjudgment proceeding to enforce a previous final judgment is properly classified as a final order. *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018). This is so even if the request for a contempt order is denied. See *Hawks v. Hawks, supra*.

In this case, although the district court did not hold Kelli in contempt of court, it nevertheless provided a remedy for Brian's three missed weekends of parenting time and clarified a provision of the parties' parenting plan related to holiday and summer parenting time. Contempt

proceedings may both compel obedience to orders and administer the remedies to which the court has found the parties to be entitled. *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016). A court's continuing jurisdiction over a dissolution decree includes the power to provide equitable relief in a contempt proceeding. *Yori v. Helms*, 307 Neb. 375, 949 N.W.2d 325 (2020). Additionally, Neb. Rev. Stat. § 42-364.15 (Reissue 2016) states in relevant part:

> In any proceeding when a court has ordered a parent to pay, temporarily or permanently, any amount for the support of a minor child and in the same proceeding has ordered parenting time, visitation, or other access with any minor child on behalf of such parent, the court shall enforce its orders as follows:
>
> (1) Upon the filing of a motion which is accompanied by an affidavit stating that either parent has unreasonably withheld or interfered with the exercise of the court order after notice to the parent and hearing, the court shall enter such orders as are reasonably necessary to enforce rights of either parent including the modification of previous court orders relating to parenting time, visitation, or other access. The court may use contempt powers to enforce its court orders relating to parenting time, visitation, or other access.

Where a situation exists that is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation. *Martin v. Martin, supra*. Therefore, upon proper notice, the trial court has equitable authority, within the confines of the contempt proceeding, to modify the parenting plan to devise a remedy to meet the situation. See *Martin v. Martin, supra*.

The district court, properly noting its "power to develop an equitable remedy," ordered the parties to agree on specific dates for the makeup parenting time by January 10, 2024. If they were unable to agree on the specific weekends, then the court stated it would decide the dates for them at a hearing on January 10, 2024. Notably, the court set "the case for status hearing and a pre-trial conference" on that date, which we construe as a reference to the separate modification action.

The contempt matters were fully addressed in the district court's November 16, 2023, order, even though the order left it to the parties to decide the specific makeup parenting time dates. We do not find that this directive affects the finality of the court's order. We do not view it as any different than the original decree not fixing the exact summer parenting time weeks to which Brian is entitled. We conclude that the November 16 order resolved all issues that were raised in Brian's contempt motion and ordered three weekends of makeup parenting time regardless of whether the parties or the court ultimately decided when they would occur. In other words, the substance of the order, which clearly granted Brian three weekends of makeup parenting time, is not dependent on the parties' agreement or the court's future determination of the precise dates. Therefore, the court's order affected a substantial right and was a final, appealable order at the time the November 16 order was entered. See *Yori v. Helms, supra* (for appellate court to acquire jurisdiction of appeal, party must be appealing from final order or judgment); *Hawks v. Hawks, supra* (holding that order of contempt in postjudgment proceeding to enforce previous final judgment is properly classified as final order, even if request for contempt is denied).

## 2. MAKEUP PARENTING TIME

Kelli argues that the district court erred in not finding her in contempt of court "but still order[ing] the equivalent of a purge order and threaten[ing] contempt of court." Brief for appellant at 19. She claims she "already made significant arrangements to switch weekends" with Brian, including "giving up some of her holiday time to ensure the children [were] supported and able to participate in their activities." *Id*. She argues that the court ordered "makeup time for a situation in which [Brian] had twice acted in the same manner" as she did, and that he should not be allowed to seek relief for "behavior in which he has also engaged in." *Id*.

We first point out that the district court's November 16, 2023, order was not a purge order. Kelli was not found to be in contempt of a court order. However, as set forth previously, contempt proceedings may both compel obedience to orders and administer the remedies to which the court has found the parties to be entitled. *Martin v. Martin, supra*. In this case, the district court properly invoked its power to provide equitable relief by providing Brian with makeup parenting time for the three weekends he missed. Section 42-364.15 specifically provides for the court to "enter such orders as are reasonably necessary to enforce rights of either parent including the modification of previous court orders relating to parenting time . . . or other access."

Although the district court held that Kelli's conduct did not rise to the level necessary for a finding of contempt, it was within its discretion to determine that makeup parenting time was an appropriate and equitable remedy. There is nothing to suggest that the court failed to consider Kelli's efforts at accommodating Brian's parenting time when it overlapped with the girls' activities, or Kelli's attempt to make up the October 2022 weekend, or other parenting opportunities she made available to Brian. We can appreciate Kelli's frustration that Brian ignored her efforts to address Berklee's dance schedule in advance in order to avoid conflicts such as the one that arose in April 2023. At the same time, the April 2023 weekend was scheduled to be Brian's parenting time, yet Kelli conditioned the release of the girls to him on that Friday based upon her expectation of when she needed to have Berklee on Saturday morning to do her hair; a time that was driven by Kelli's commitment to another child's schedule. And certainly, both parties could have been more flexible regarding the makeup parenting time in October 2022. Whether the girls would have missed church, a birthday party, or a dance rehearsal should have been something their parents could have resolved by focusing on the children's best interests.

As observed by the district court, both parties could have tried to be more reasonable with one another for the sake of their children. The court found that both parents "unilaterally made decisions," and that they needed to "put aside [their] issue with each other to do what's right for [their] child." The court ultimately focused on the fact that Brian missed three weekends of time with the girls, "who also missed three weekends with their father." Further, the court's statement that the "failure to allow for the missed weekends of visitation may result in a contempt finding" was appropriately cautionary given the ongoing tension and ineffective communication between the parties regarding Brian's parenting time.

## 3. INTERPRETATION OF SUMMER PARENTING PLAN

Kelli contends that the district court "erred in reinterpreting and, therefore, changing the summer parenting schedule." Brief for appellant at 14-15. She argues that the "summer schedule

had consistently not included weekends for the previous 2 years and [Brian] did not argue the schedule beyond one weekend (the weekend following Mother's Day), as well as utilized his time during [Kelli's] equivalent weekends the previous two years (the weekends following Father's Day)." *Id*. at 15.

We initially observe that the district court did not change the summer parenting time schedule. Rather, the district court clarified that Mother's Day and Father's Day were holidays when interpreting the parenting plan. Further, it held that the summer parenting time language only prevented Brian from exercising one of his week-long summer parenting time options that first week after the school year ended; it did not prevent him from having parenting time that first weekend after the end of the school year.

Because Mother's Day and Father's Day were properly characterized as holidays, the district court correctly applied the provision regarding the priority of holidays. That provision in the parties' parenting plan states:

> **Holidays Take Priority:** This Holiday visitation schedule shall supersede the regular weekend and summer parenting time schedule. The regular visitation schedule will continue with the parent who did not have the minor children on the previous holiday and continue on from that point, alternating between the parents every other weekend.

Because Mother's Day weekend coincided with Brian's regularly scheduled weekend, the holiday took precedence over the regular weekend schedule, and Kelli properly had the children for that holiday weekend. However, the following weekend was a general alternating weekend, therefore Brian was entitled to the children that weekend. As such, the district court properly interpreted the parties' parenting plan when concluding that Brian should have had the children the weekend of May 19 to 21, 2023.

Kelli also claims that Brian should be "estopped" from arguing that he is entitled to makeup parenting time for the weekend of May 19 to 21, 2023, because he received parenting time the weekend following Father's Day in the summer. This argument is not persuasive because Brian was awarded 4 weeks of summer parenting time and can elect to exercise a week of that time after Father's Day weekend.

### 4. Best Interests of Children

We now turn to Kelli's argument that the district court "erred in providing 3 makeup weekends when [she] had reason to withhold the children and has final say regarding the 'parenting functions' for the children." Brief for appellant at 16. She contends that the court "erred in providing equitable relief when [Brian] was not acting within the best interest of the children and there was evidence that [Kelli] had been communicating far in advance." *Id*. at 17. She also argues that the court "did not consider the effects on the child(ren) and made a biased assumption that all children have the same benefit from a certain amount of time with both parents." *Id*. at 17-18. She claims that "[d]espite the transitions occurring for 3½ years, Kaia continues to cry and is scared to go to [Brian's] house every time," and that this was "not disputed by [Brian] during the hearing." *Id*. at 18.

- 10 -

Brian responds by noting that "[n]o basis for [Kaia's] fear was presented and no evidence supported it with the exception of Kelli's own self-serving testimony." Brief for appellee at 11. Instead, Brian directs us to the district court's comment to Kelli regarding her warning to Brian the weekend of the dance competition that he should not approach her or her family at the event. The court pointed out that although Kelli wanted the court to believe she was coparenting, "[a] coparent wouldn't say something like that."

As to Kelli's argument that the parenting plan grants her the "final say" on certain parenting matters, this authority does not allow her to disregard court orders. The right of access to one's children should not be denied unless the court is convinced such visitations are detrimental to the best interests of the child. *Koch v. Koch*, 219 Neb. 195, 361 N.W.2d 548 (1985). In the absence of extraordinary circumstances, a parent should not be denied the right of parenting time. See *id.*

Such extraordinary circumstances do not exist here. The evidence adduced at trial indicates that Brian has consistently exercised his parenting time since the parties' dissolution decree was entered in August 2021. In addition, there is no evidence to suggest that spending time with Brian has a negative impact on the children's health, welfare, or social behavior, or that Brian has engaged in abuse or neglect. See Neb. Rev. Stat. § 43-2923(6) (Reissue 2016) (best interests considerations).

We conclude that the district court properly found that it was in the best interests of the children to order three weekends of makeup parenting time.

5. ALLEGED BIAS AND DEFAMATION

Kelli argues that the district court "acted in a biased and defamatory manner by indicating that both parties do not communicate with one another, despite evidence to the contrary." Brief for appellant at 18. She claims there was "ample evidence that [she] attempted to communicate extensively with [Brian] regarding situations that were going on and attempting to make arrangements." *Id.* She also points to the weekend Kaia was sick and Brian "proceeded to call law enforcement," claiming he "needed to ensure the children were safe and lied under oath regarding this." *Id.* Kelli argues that the court "entered potential sanctions" on her rather than "imposing sanctions on [Brian] for [his] failure to maintain basic parenting functions, as well as for perjury." *Id.* She also takes issue with the court saying she was not coparenting when she "asked [Brian] not to approach her and her family" at the dance competition "despite the fact that one of the primary parenting functions is to minimize the child(ren)'s exposure to harmful parental conflict . . . which she did based on [Brian's] messages regarding the event." *Id.* She further claims that the court made "abusive comments." *Id.* at 19. She refers to the court's statement at the hearing, "I want to sit both of you in the same room and you have to stay there for a year, see how it goes, see what comes out. This is . . . ridiculous what you're doing to your children as a parent, both of you."

"'[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion' directed to a trial judge." *Tilson v. Tilson*, 307 Neb. 275, 293, 948 N.W.2d 768, 783-84 (2020) (quoting *Huber v. Rohrig*, 280 Neb. 868, 791 N.W.2d 590 (2010)). Nor can a judge's ordinary efforts at courtroom administration be a basis for bias or partiality. *Tilson v. Tilson, supra*. Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality

motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. *Id.*

Here, the district court's statements during trial and in its order were directed towards both parties and do not show any deep-seated favoritism or antagonism. In our review of the record, the court exercised considerable patience under the circumstances. It also made a reasonable and fair assessment of the actions of both parties. It pointed out that there was "contention" between them, and that they both needed to put aside their issues with one another. The court did not "want to have to be the parent that decides for the two of you all the time." In its order, the court stated, "The parents absolutely need to learn to co-parent with each other and work together to do what is best for these two children and put their own issues with each other aside." While the court did occasionally, but appropriately, admonish the parties regarding their behaviors, it did so to encourage the parties to find a way to work together for the benefit of their children. We find nothing in the record to demonstrate any bias from the court towards either party.

## VI. CONCLUSION

For the foregoing reasons, we affirm the district court's November 16, 2023, order.

AFFIRMED.